Filed 9/23/20  P. v. Lopez CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B301826 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. BA128074 |
| v. | |
| ARMANDO ARELLANO LOPEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, James Richard Dabney, Judge.  Affirmed.

Mark D. Lenenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Armando Arellano Lopez appeals from the trial court's denial of his petition for resentencing under Penal Code section 1170.95.[1]  Lopez is not eligible for resentencing because he was not tried for or convicted of murder under either the felony murder rule or the natural and probable consequences doctrine.  Accordingly, we affirm the court's order summarily denying Lopez's petition.

## FACTS AND PROCEDURAL BACKGROUND

In June 1996 a jury convicted Lopez of the first degree murder of Ricardo Miramontes.  The jury found true an allegation that, in the commission of the crime, a principal was armed with a firearm.

After Senate Bill No. 1437 (SB 1437) took effect, Lopez filed on February 1, 2019 a form petition for resentencing under section 1170.95.  Lopez checked box 6, stating, "I was convicted of 2nd degree murder under the natural and probable consequences doctrine or under the 2nd degree felony murder doctrine and I could not now be convicted of murder because of changes to Penal Code § 188, effective January 1, 2019."[2]

The District Attorney's Office filed two requests for extensions of time to submit an informal response to Lopez's petition.  The District Attorney served the requests on the office of the Alternate Public Defender.  On April 8, 2019, when the prosecution's first request for more time was heard, the deputy

---

[1]     References to statutes are to the Penal Code.

[2]     Although it is not clear from the copy of Lopez's petition in the Clerk's Transcript, it appears Lopez did not check boxes 1 through 4 or 5 but he did check boxes under box 5 as well as box 6.  To avoid any need for the trial court to send the incomplete petition back to Lopez, we will proceed as if he had checked the relevant boxes on the form.

public defender assigned to that courtroom told the court she was "not on this case." The court "inform[ed] counsel that he [would] appoint the Office of the Public Defender at a later date." On June 17, 2019, when the prosecution's second request for more time was heard, the minute order states, "Defendant is not present in court, but represented by Keisha Reed-McClean Deputy Public Defender."

On August 26, the District Attorney filed a response to Lopez's petition for resentencing. The People stated Lopez had been convicted of murder but not under "either a felony murder or a natural and probable consequences theory of culpability. His jury was not instructed on either of those theories of culpability. Rather, petitioner was prosecuted as a direct aider and abettor to the murder." The District Attorney attached to the response copies of the 1997 court of appeal opinion affirming Lopez's conviction and the jury instructions given to his jury.[3]

On August 26, 2019, the trial court (Judge James Richard Dabney) issued an in chambers ruling. The minute order reflects Lopez was "not present in court, and not represented by counsel." In a written order, Judge Dabney noted the prosecution's response to the petition asserted Lopez had not been "convicted as an aider and abettor under the natural and probable [consequences] doctrine or under a theory of felony murder." The court stated it had "reviewed the instructions given the jury" and found the People's assertion to be accurate. Accordingly,

---

[3]    The District Attorney also argued SB 1437 was unconstitutional. The trial court did not reach that argument. Courts have held section 1170.95 to be constitutional. (See *People v. Solis* (2020) 46 Cal.App.5th 762; *People v. Superior Court (Gooden)* (2019) 42 Cal.App.5th 270.)

Judge Dabney concluded, Lopez had failed to make a prima facie showing under section 1170.95.

## DISCUSSION

Lopez contends his form petition "stated a prima facie case" for resentencing and the trial court "erred" "by stepping outside the four corners of [his] petition to conduct an unauthorized investigation."[4] We disagree. The trial court read the instructions given to the jury at Lopez's trial. Those instructions were properly considered for the nonhearsay purpose of determining whether Lopez was tried on a natural and probable consequences theory or under the felony murder rule. He was not. When—as here—the record of conviction establishes the petitioner is ineligible for relief as a matter of law, the court may summarily deny the petition.

SB 1437 added section 1170.95 to the Penal Code. It "permits an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and to be resentenced on any remaining counts if he or she could not have been convicted of first or second degree murder because of SB 1437's changes to sections 188 and 189. (§ 1170.95, subd. (a).)" (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 326 (*Verdugo*), review granted Mar. 18, 2020, S260493.)

"If the petition contains all required information, section 1170.95, subdivision (c), prescribes a two-step process for the

---

[4] Lopez first states "no documentary evidence was appended to the petition." Lopez then states he "filed a declaration, with exhibits, that followed step-by-step the conditions for relief" under SB 1437. By "declaration," Lopez apparently means the petition itself, as his record citations are to the petition. The petition in our record on appeal has no "exhibits."

4

court to determine if an order to show cause should issue: 'The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.' " (*Verdugo*, *supra*, 44 Cal.App.5th at p. 327.)

As our colleagues in Division Seven have noted, "the court's role in conducting the first prima facie review of the petition . . . must be something more than simply determining whether the petition is facially sufficient." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 328.) "The court's role at this stage is simply to decide whether the petitioner is ineligible for relief as a matter of law, making all factual inferences in favor of the petitioner." (*Id.* at p. 329.) The statute "directs the court in considering the facial sufficiency of the petition to access readily ascertainable information"— "documents in the court file or otherwise part of the record of conviction." (*Ibid*.) Based on this threshold review, the court can dismiss any petition filed by a person who is ineligible for relief as a matter of law—for example, someone who was not convicted of felony murder or murder under the natural and probable consequences theory. (See *People v. Edwards* (2020) 48 Cal.App.5th 666, 673-674 (*Edwards*), review granted July 8, 2020, S262481 [trial court considered jury instructions and reporter's transcript of prosecutor's closing argument in determining petitioner had not been convicted of felony murder or murder under the natural and probable consequences doctrine]; *People v. Soto* (2020) 51 Cal.App.5th 1043 (*Soto*) [jury instructions]; *People v. Smith* (2020) 49 Cal.App.5th 85, 92,

fn. 5, review granted July 22, 2020, S262835 ["if the jury was not instructed on a natural and probable consequences or felony-murder theory of liability, the petitioner could not demonstrate eligibility as a matter of law because relief is restricted to persons convicted under one of those two theories"]. Cf. *Verdugo*, *supra*, 44 Cal.App.5th at p. 331 [Legislature intended superior courts to "perform a substantive gatekeeping function, screening out clearly ineligible petitioners before devoting additional resources to the resentencing process."]. See also *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1137-1139 (*Lewis*), review granted Mar. 18, 2020, S260598 [superior court can consider record of conviction in evaluating the petitioner's initial prime facie showing under § 1170.95, subd. (c); petitioner was direct aider and abettor and thus ineligible for resentencing]; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 899, review granted Aug. 12, 2020, S263219 (*Tarkington*) [record of conviction showed petitioner was actual killer].)[5] The leading treatise states, "Nothing in the statute precludes the court . . . from conducting its own review of other readily available information such as the court's file." (Couzens et al., Sentencing Cal. Crimes (The Rutter Group 2020) ¶ 23:51(H)(2) (hereafter Couzens).)

Here, Judge Dabney reviewed the jury instructions given at Lopez's trial. Lopez's jury was instructed with CALJIC Nos. 8.10, 8.11, 8.20, 8.30, 8.70, and 8.71 on murder, malice, and first

---

[5]     *Lewis* and *Verdugo*—as well as *People v. Cornelius* (2020) 44 Cal.App.5th 54 (*Cornelius*), review granted Mar. 18, 2020, S260410—were published before Lopez filed his opening brief but he did not cite any of those cases. In his reply brief, Lopez states all three cases "are badly reasoned."

6

versus second degree murder.[6]  The jury also was instructed on direct aiding and abetting, with CALJIC Nos. 3.01 and 3.03. But the jury was not instructed on felony murder or the natural and probable consequences doctrine.

*Soto*, *supra*, 51 Cal.App.5th 1043 is virtually identical to this case.  There, Soto was the driver of a car carrying another man who shot the victim to death.  In 1996 a jury convicted him of second degree murder.  Soto's jury was instructed on "principles of aider and abettor liability" but not "that Soto could be liable for [first and second degree murder] either as the natural and probable consequence of the commission of another crime or based upon the felony-murder rule." (*Id*. at pp. 1048-1050.)

Soto petitioned for resentencing under section 1170.95, the trial court denied the petition, and the court of appeal affirmed. (*Soto*, *supra*, 51 Cal.App.5th at p. 1048.)  The appellate court held that "the jury instructions themselves demonstrate as a matter of law that Soto could not make a prima facie showing that he is entitled to relief." (*Id*. at p. 1055.)  The court noted Soto's "jurors were not provided any instruction on which they could have found Soto guilty of murder under [the natural and probable consequences] doctrine."  Accordingly, "under the instructions, the jury necessarily found Soto culpable for murder based on

---

[6]     It is unclear if the copy of the jury instructions that the District Attorney filed in the trial court was missing two pages: those containing CALJIC Nos. 8.30 (unpremeditated second degree murder) and 8.70 (degree of murder).  We granted the Attorney General's motion to augment the record with (1) a complete copy, signed by the trial court, of the jury instructions given at Lopez's trial, and (2) the reporter's transcript of the instructions as read to the jury by the trial court.

7

his own actions and mental state as a direct aider and abettor of murder." (*Ibid*.)

We agree with the *Soto* court's straightforward, common sense approach. (See also *Edwards*, *supra*, 48 Cal.App.5th at p. 671 [superior court's summary denial of petition "was based on a review of the jury instructions . . . 'regarding felony-murder or aider and abettor natural and probable consequences theories of murder' "]; *Tarkington*, *supra*, 49 Cal.App.5th at p. 909 [court "can determine whether the defendant . . . was tried under the felony-murder or natural and probable consequences doctrine[ ] by a simple examination of the record, including . . . the jury instructions"].)

Lopez contends the trial court "erred by engaging in an analysis of the evidence as outlined in the Court of Appeal opinion and making credibility determinations." He argues the court relied on "hearsay factual statements in the court of appeal opinion" affirming his conviction. The record does not support these contentions.

As noted, the sole basis the trial court gave for its summary denial of Lopez's petition was its review of the jury instructions. The court stated, in essence: "The People say Lopez was not convicted as an aider and abettor under the natural and probable consequences doctrine or under a theory of felony murder. I've read the jury instructions. The People's representation is accurate." Judge Dabney made no reference to this court's 1997 opinion on direct appeal or to any factual statements in that opinion.[7] (Cf. *Soto*, *supra*, 51 Cal.App.5th at p. 1055

---

[7] As *Verdugo* and other cases have noted, a court of appeal opinion—whether or not published—is part of the record of conviction. (See *Verdugo*, *supra*, 44 Cal.App.5th at p. 333; *Lewis*, *supra*, 43 Cal.App.5th at pp. 1137-1139. Cf. *People v. Woodell* (1998) 17 Cal.4th 448, 459 [not all hearsay statements within

8

[jury instructions given at petitioner's trial provide " 'readily ascertainable facts from the record' that refute the petitioner's showing, and reliance on them to make the eligibility or entitlement determinations may not amount to 'factfinding involving the weighing of evidence or the exercise of discretion' "].)

We do not understand Lopez to be arguing that the jury instructions themselves are inadmissible hearsay. Any such contention would be meritless in any event. If someone offered the jury instructions as evidence of what the law is in California, they might be hearsay. But here the District Attorney presented the instructions only for the nonhearsay purpose of establishing the theories of criminal responsibility the prosecution did— and did not—present to the jury. "There is a well-established exception or departure from the hearsay rule applying to cases in which the very fact in controversy is whether certain things were said or done and not as to whether these things were true or false, and in these cases the words or acts are admissible not as hearsay, but as original evidence." (*People v. Henry* (1948) 86 Cal.App.2d 785, 789. See generally Witkin, Cal. Evidence (5th ed. 2020) Hearsay, § 32 [citing cases; "In these situations, the words themselves, written or oral, are 'operative facts,' and an issue in the case is whether they were uttered or written."].)

---

an appellate opinion are admissible or subject to judicial notice but appellate opinion can be used to determine the basis of a conviction, i.e., to "help determine the nature of the crime of which the defendant has been convicted"].) The California Supreme Court has granted review in *Lewis* on the question of whether the superior court may consider the record of conviction in determining if a petitioner has made a prima facie showing of eligibility for relief under section 1170.95. (*Soto, supra*, 51 Cal.App.5th at p. 1055, fn. 11.) In any event, here—as we have said—the trial court did not rely on our 1997 opinion.

The "operative fact" at issue in Lopez's case is whether the court instructed the jury on felony murder or the natural and probable consequences doctrine. As the court did not, Lopez is ineligible for resentencing as a matter of law.

Finally, "[i]f, as here, the court concludes the petitioner has failed to make the initial prima facie showing required by subdivision (c), counsel need not be appointed. Of course, if the petitioner appeals the superior court's summary denial of a resentencing petition, appointed counsel on appeal can argue the court erred in concluding his or her client was ineligible for relief as a matter of law." (*Verdugo*, *supra*, 44 Cal.App.5th at pp. 332-333. Accord, *Lewis*, *supra*, 43 Cal.App.5th at p. 1140 ["the trial court's duty to appoint counsel does not arise unless and until the court makes the threshold determination that petitioner 'falls within the provisions' of the statute"]; *Cornelius*, *supra*, 44 Cal.App.5th at p. 58 [rejecting contention that court was required to appoint counsel for petitioner "once he alleged he satisfied the filing requirements for the petition, regardless of whether the allegations [were] accurate"]; *Tarkington, supra,* 49 Cal.App.5th at pp. 899-902; Couzens, *supra*, ¶ 23:51(H)(2) ["It would be a gross misuse of judicial resources to require the issuance of an order to show cause or even appointment of counsel based solely on the allegations of the petition, which frequently are erroneous, when even a cursory review of the court file would show as a matter of law that the petitioner is not eligible for relief."]. But see *People v. Cooper* (Sept. 1, 2020, A156880) __ Cal.App.5th __ [2020 WL 5175210] [disagreeing with *Verdugo* and *Lewis*].)

Our high court has granted review in *Lewis*, *Verdugo*, and *Cornelius*, identifying the issues to be considered as "(1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of

10

eligibility for relief under Penal Code section 1170.95? (2) When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)?" (*Lewis*, review granted Mar. 18, 2020, S260598; *Verdugo*, review granted Mar. 18, 2020, S260493; *Cornelius*, review granted Mar. 18, 2020, S260410.) Pending further guidance from our Supreme Court, we agree with our colleagues in Divisions One, Six, and Seven who issued *Lewis*, *Cornelius*, and *Verdugo*, respectively.

The trial court properly denied Lopez's petition for resentencing because he was not tried for or convicted of felony murder or murder under the natural and probable consequences doctrine. Accordingly, he is indisputably ineligible for relief under SB 1437 as a matter of law.

## DISPOSITION

We affirm the trial court's order denying Armando Arellano Lopez's petition for resentencing under section 1170.95.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

I concur:

DHANIDINA, J.

11

LAVIN, J., Dissenting:

For the reasons laid out in my dissent in *People v. Tarkington* (2020) 49 Cal.App.5th 892, review granted August 12, 2020, S263219, I would reverse the order.


LAVIN, Acting P. J.